# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN DALTON,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>JOHN KATAVICH,<br><br>　　　　Respondent. | Case No. 1:15-cv-00865-AWI-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Alvin Dalton is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) ineffective assistance of counsel; (2) selective enforcement of the law; (3) destruction of mitigating and exculpatory evidence; (4) the trial court's prejudicial and biased remarks against Petitioner; (5) the trial court's interference with defense cross-examination of prosecution's key witness; (6) prosecutorial misconduct; (7) unfair sentencing; and (8) the trial court's disregard of Petitioner's fundamental rights.

For the reasons discussed herein, the Court recommends dismissal of Petitioner's second and sixth claims for relief and denial of the petition.

## I.

## BACKGROUND

After his first trial ended in a mistrial, Petitioner was convicted in 2011 by a second jury in Fresno County Superior Court of second-degree murder (count 1) and two counts of

unpremeditated attempted murder (counts 2 and 3). The jury found true the allegations that Petitioner personally used a handgun in the commission of each count and that Petitioner intentionally discharged a firearm in the commission of each count, causing death or great bodily injury in counts 1 and 2. The jury also found true the allegation that Petitioner inflicted great bodily injury in the commission of count 2. Petitioner was sentenced to an aggregate imprisonment term of eighty-three years to life. People v. Dalton, No. F063443, 2014 WL 435528, at *1 (Cal. Ct. App. Jan. 30, 2014).

On January 30, 2014, the California Court of Appeal, Fifth Appellate District, affirmed the judgment. Dalton, 2014 WL 435528, at *7. The California Supreme Court denied Petitioner's petition for review on April 16, 2014. (LDs[1] 20, 21). Thereafter, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court. (LD 24). The petition was denied without prejudice on September 2, 2014. (LD 25). Petitioner filed another habeas petition in the Fresno County Superior Court, which denied the petition on November 18, 2014. (LDs 22, 23). Petitioner then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition without prejudice on February 5, 2015. (LDs 26, 27). Finally, Petitioner filed a habeas petition in the California Supreme Court, which summarily denied the petition on May 13, 2015. (LDs 28, 29).

On June 8, 2015, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition and Petitioner has filed a traverse. (ECF Nos. 31, 35).

## II.

## STATEMENT OF FACTS[2]

In March 2011, defendant Alvin Dalton shot his next door neighbor, Danetta H., and her two teenage children, Dazhane H. and Dezmon H., after intervening in a physical altercation involving defendant's girlfriend, Lora White. As a result of the shooting, Danetta died from a gunshot wound to the head, Dazhane suffered serious injuries requiring surgery, and Dezmon suffered superficial injuries.

. . .

---

[1] "LD" refers to the documents lodged by Respondent on October 26, 2015. (ECF No. 33).
[2] The Court relies on the California Court of Appeal's January 30, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

On March 2, 2011, around 11:30 a.m., Danetta and Dazhane were walking home from a nearby store when Lora started spraying them with mace and another strong-smelling substance. Dazhane reacted by throwing Gatorade bottles and a water bottle towards Lora, and Danetta sprayed Lora with a mixture of water and insect spray.

Lora went inside her apartment and shortly remerged carrying a pot of steaming hot water. Lora ran towards Danetta and poured the water on her. Lora then hit Danetta multiple times with the pot. Dazhane ran over and grabbed Lora by the hair and hit Lora multiple times in the head.

Defendant, who had been outside fixing the lock on his door, went to grab Dazhane and pull her off Lora. As he pulled Dazhane away from Danetta and Lora, defendant said, "Let it be a one-on-one fight." Dazhane continued to hit and kick defendant as he moved her away from Danetta and Lora who were now both on the ground.

Dazhane was able to get away from defendant and called out for her brother, Dezmon. A few seconds later, Dezmon ran out of their apartment and tried to pull Lora off Danetta. In the meantime, defendant punched Dazhane in the face and she fell to the ground. After defendant punched Dazhane, Dezmon asked, "You just going to hit my sister?" Defendant replied, "yes."

Dezmon pushed defendant and punched him in the face. Defendant said, "Oh, you're going to hit me, you're going to hit me?" Then defendant said, "Fuck this shit" and pulled out a gun. After firing one shot into the air, defendant pointed the gun at Danetta and shot her two to three times. After Danetta fell to the ground, defendant pointed the gun at Dazhane and shot her twice. Defendant then pointed the gun at Dezmon and fired two shots.

Dezmon started walking towards defendant and said, "You shot my mom" and "You killed my mom." Defendant said "yes" to each statement. Dezmon became angry, grabbed defendant's arm, and started wrestling with defendant standing up. As they were wrestling, defendant touched Dezmon's chest with the gun and Dezmon heard a click. Lora came up next to them and asked defendant to give her the gun. Defendant handed Lora the gun and let go of Dezmon. Defendant then went into his apartment.

### *The defense*

Defendant described living next door to Danetta as "constant terrorism." Defendant explained that Danetta had threatened him and his personal property many times, and had vandalized his patio, car, and truck.

On the night before the shooting, defendant came home to find his security screen door covered with a "sludge material" including pasta. Lora had to let him in because he could not get his key in the lock. Defendant got three pots of hot water and took them outside to clean the door.

Around 11:00 p.m., Danetta came out and said, "um-hum, you're going to be cleaning all night" and "[m]e and my homeboys, we're going to jack you—you and your car tonight," referring to the Strothers Boys gang. Dazhane was standing next to Danetta when she made this threat. Defendant took it to be a credible threat because Danetta had carried out all her past threats.

After Danetta threatened him, defendant immediately went inside his home and armed himself. He then went back outside and threw hot water on the security screen door. It took him about 30 minutes to clean the door. Defendant also called the police that night. He estimated that there had been 50 such incidents in the past six months where the police had been called.

The next morning, defendant went outside to clean the lock on the security screen door. Dazhane tried to follow Lora inside their apartment, but defendant stopped her. He then turned his attention back to cleaning the lock. Next defendant heard Danetta and Dazhane cussing and yelling at Lora. He turned around and saw Danetta and Lora "tangled" on the ground, and saw Dazhane kicking and punching Lora in the head. Defendant dropped what he was doing and ran over and pulled Dazhane off of Lora. Dazhane punched defendant in the face, kicked him in the legs and groin area, and tried to bite him in the chest.

Defendant then saw Dezmon run over to Lora and start pulling her hair and hitting her. Defendant ran over to protect Lora. Defendant saw Dezmon reach into his left pocket. As defendant was looking down, Dezmon punched him. Defendant then reached for his gun. Defendant explained he reached for his gun because he was in fear for his life based on the threat Danetta had made to him the previous night. Defendant reiterated that "every time she would make a threat, she would follow through with it."

According to defendant, before he reached for his gun, all three family members—Danetta, Dazhane, and Dezmon—were hitting and kicking him. Defendant estimated he was hit five to six times and kicked three or four times. When defendant pulled out his gun, Danetta and Dazhane were standing facing him and Dezmon was behind him. Defendant fired his gun because he was in fear for his life and was trying to escape to his apartment.

Dalton, 2014 WL 435528, at *1–3 (footnote omitted).

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kings County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Richter</u>, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. <u>See</u> <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2276 (2015); <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1094 n.1 (2013); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not <i>de novo</i> review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

1 inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at
2 102.

### IV.

### REVIEW OF CLAIMS

**A.  Selective Enforcement of the Law**

In his second claim for relief, Petitioner asserts that the police violated his constitutional rights over fifty times from January 2010 to March 2011 by failing to arrest the victim, Danetta.[3] (ECF No. 1 at 9, 224).[4] Petitioner also asserts that on January 24, 2011, Officer Estrada omitted evidence in his police report that Petitioner had asked Officer E. Claiborne to arrest Danetta for assault, battery, and vandalism of property. (<u>Id.</u> at 227). Respondent argues that this claim is not cognizable on federal habeas review because it does not directly implicate the validity of Petitioner's conviction or sentence. (ECF No. 31 at 24).

This claim was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court found that Petitioner failed to state a *prima facie* case for habeas relief under <u>People v. Duvall</u>, 9 Cal. 4th 464, 474 (1995), by not "present[ing] any objective evidence that would substantiate the contentions." (LD 23 at 3–4). The California Court of Appeal, Fifth Appellate District, denied the petition without prejudice because it did "not provide an adequate factual context for the issues petitioner raises," with citation to <u>Duvall</u>. (LD 27). The California Supreme Court summarily denied the petition. (LD 29).

As articulated in the petition, this claim is not directly relevant to Petitioner's request for habeas relief. Whether police officers allegedly violated Petitioner's constitutional rights on multiple occasions prior to and separate from the March 2, 2011 incident, which gave rise to the convictions at issue here, was not a proper subject of the criminal proceeding against Petitioner. As the claim fails to attack the validity of Petitioner's custody, it is not an issue within this Court's federal habeas jurisdiction. Section 2254(a)'s language "explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." <u>Bailey v. Hill</u>, 599 F.3d

---

[3] To avoid confusion, the Court will refer to individuals as they were referenced by the California Court of Appeal in the January 30, 2014 opinion.
[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

976, 980 (9th Cir. 2010). That is, the remedy that the petitioner seeks should "directly impact—and [be] directed at the source of the restraint on—his liberty." Id. at 981.

The Court "must construe *pro se* habeas filings liberally." Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)). To the extent Petitioner argues that law enforcement's failure to arrest Danetta and the omission in the police report of Petitioner's request to have Danetta arrested for assault, battery, and vandalism provide justification for Petitioner's offense, that is an issue of whether such circumstances provide a legally valid excuse or justification for homicide under California law[5] and is not cognizable in federal habeas proceedings. See Barefoot v. Estelle, 463 U.S. 880, 887 (1983) ("The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Accordingly, Petitioner's second claim for relief must be dismissed.

### B.  Judicial Misconduct

In his third, fourth, fifth, and eighth claims for relief, Petitioner asserts various instances of judicial misconduct. Petitioner alleges that the trial court altered the record on appeal, made prejudicial and biased remarks about Petitioner in the presence of the jury and media, improperly interfered with the cross-examination of the prosecution's key witness, and generally disregarded Petitioner's fundamental rights during the course of the trial. (ECF No. 1 at 11, 14, 17, 23). Respondent argues that the state court was not unreasonable in rejecting Petitioner's unsupported and incredible allegations of judicial misconduct. (ECF No. 31 at 26).

These claims were raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court found that Petitioner failed to state a *prima facie* case for habeas relief under

---

[5] The Court notes that at trial, Lora testified that she called the police approximately forty times due to Danetta. (5 RT 744). Petitioner testified that the police were called approximately fifty times over the span of six months due to altercations that involved "[a]ggressive assaults and vandalism by Danetta." (6 RT 790–91). The Court addresses in section IV(E)(2)(a), *infra*, whether trial counsel provided ineffective assistance for allegedly failing to investigate and pursue mitigating evidence in the police reports and for failing to introduce as evidence all of Danetta's criminal record and police contacts.

Duvall[6] by not "present[ing] any objective evidence that would substantiate the contentions." (LD 23 at 3–4). The California Court of Appeal, Fifth Appellate District, denied the petition without prejudice because it did "not provide an adequate factual context for the issues petitioner raises," with citation to Duvall. (LD 27). The California Supreme Court summarily denied the petition. (LD 29). The Court presumes that the California Supreme Court adjudicated the claim on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99–100. Generally, federal courts "look through" summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. "Where there has been one reasoned state judgment rejecting a federal claim, [the Court presumes] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" unless "strong evidence can refute" the presumption. Ylst, 501 U.S. at 803, 804. Accordingly, the Court finds that the California Supreme Court denied the judicial misconduct claims on procedural grounds under Duvall.

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on concerns of comity and federalism. Id. at 730–32. Procedural default is an affirmative defense that the state must assert; otherwise the defense is waived. Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003). As Respondent has failed to raise procedural default as an affirmative defense to Petitioner's judicial misconduct claims, the Court will review these claims de novo. See Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005) (reviewing claim de novo when state forfeited procedural default defense and there was no state court decision on the merits).

　　1.　Judicial Conduct During the Cross-Examination of Dazhane

Petitioner's third, fourth, and fifth claims for relief arise from the trial court's conduct

---

[6] "To satisfy the initial burden of pleading adequate grounds for relief . . . [t]he petition should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." Duvall, 9 Cal. 4th at 474.

1  during the cross-examination of prosecution witness Dazhane. Petitioner alleges that during

2  cross-examination, Dazhane became evasive, stopped answering defense counsel's questions,

3  and then rolled her eyes and looked toward the jury and stated, "He killed my mother." (ECF No.

4  1 at 153). Petitioner alleges that when defense counsel attempted to resume questioning the

5  witness, "the trial judge blurted out, 'Stop it, he killed her mother for Christ's sake,'" and

6  improperly put a complete halt to the cross-examination. (Id. at 153–54). Petitioner further

7  alleges that the trial court and/or the court reporter thereafter tampered with the record and

8  deleted these statements from the trial transcript. (Id. at 154).

9      The Court has reviewed the record, and the alleged statements made by Dazhane and the

10  trial court during cross-examination are not found in the trial transcript. (2 RT[7] 286–305, 350–

11  386). Petitioner alleges that the trial court "put a complete halt" to the cross-examination after

12  line 24 on page 353 of the record, which corresponds with the court's afternoon session on

13  August 15, 2011. However, the record provides that Dazhane's cross-examination continued

14  until the evening recess and even resumed the following day. (2 RT 386; 3 RT 397). "[S]elf-

15  serving statements by a defendant that his conviction was constitutionally infirm are insufficient

16  to overcome the presumption of regularity accorded state convictions." Turner v. Calderon, 281

17  F.3d 851, 881 (9th Cir. 2002) (internal quotation marks omitted) (quoting United States v. Allen,

18  153 F.3d 1037, 1041 (9th Cir. 1998)). Petitioner has not provided any evidence, such as

19  affidavits from his trial attorney, the media, or audience members present that day, to

20  substantiate his allegation that the trial court altered volume II of the reporter's transcript to

21  exclude the alleged statements made by Dazhane and the court. (ECF No. 1 at 152). Conversely,

22  the court reporter in this case certified that "Volumes I through VI, pages numbers 1 through

23  1115, comprise a full, true and correct statement of the proceedings as reflected therein." (6 RT

24  1115).

25      As Petitioner has failed to establish that the trial court made the alleged prejudicial and

26  biased remark, completely halted the cross-examination of Dazhane before defense counsel was

27  finished, and altered the trial transcript, the Court finds that Petitioner is not entitled to habeas

28  _____
[7] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on October 26, 2015. (ECF No. 33).

1    relief on his third, fourth, and fifth claims and they must be denied.

2        2.  Judicial Bias

3        In his eighth claim for relief, Petitioner asserts that the trial court disregarded Petitioner's

4    fundamental rights during the course of the trial. (ECF No. 1 at 23). In support of this claim,

5    Petitioner alleges, *inter alia*, that the trial court showed favoritism and gave assistance to the

6    prosecution's key witness and ignored trial errors prejudicial to Petitioner. (Id. at 23–24).

7        The Supreme Court has long recognized that due process "clearly requires a 'fair trial in a

8    fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome

9    of his particular case." Bracy v. Gramley, 520 U.S. 899, 904–05 (1997) (quoting Withrow v.

10   Larkin, 421 U.S. 35, 46 (1975)). "The Constitution requires recusal where 'the probability of

11   actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"

12   Hurles v. Ryan, 752 F.3d 768, 788 (9th Cir. 2014) (quoting Withrow, 421 U.S. at 47). Thus, to

13   establish a due process violation Petitioner need not prove actual bias, just an intolerable risk of

14   bias. Hurles, 752 F.3d at 789. However, Petitioner must "overcome a presumption of honesty

15   and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. The Supreme Court has

16   held that in the absence of some extrajudicial source of bias or partiality, "judicial rulings alone

17   almost never constitute a valid basis for a bias or partiality motion" and "judicial remarks during

18   the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or

19   their cases ordinarily do not support a bias or partiality challenge . . . [unless] they display a

20   deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v.

21   United States, 510 U.S. 540, 555 (1994). See Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir.

22   2008) (applying Liteky in § 2254 habeas proceeding governed by the AEDPA).

23       Petitioner argues that the trial court showed favoritism and improperly gave assistance to

24   the prosecution's key witness, citing to the following exchange during cross-examination:

25           [DEFENSE COUNSEL]: Q. That's Exhibit D. Where was your
26           brother?

27           [DAZHANE H.]: A. My brother, he was somewhere over here, I'm
             not really for sure, but he was over here (pointing).

28           Q. "Over here" is where, ma'am? You need—make the pointer—

[THE COURT]: She's not doing it on purpose. Trust me.

[DEFENSE COUNSEL]: Q. Okay. That would be the area by 16 in the middle of—where it says "sidewalk," and I would say in the middle of the 38-inch line mark. Would that be a fair statement, ma'am?

A. Yeah, He was off.

(3 RT 420–21). Nothing in this exchange displays a deep-seated favoritism or antagonism that would make fair judgment impossible. With respect to the assertion that the trial court ignored trial errors prejudicial to Petitioner, Petitioner does not demonstrate that the trial court's judicial rulings were the product of some extrajudicial source of bias or partiality.

Based on the foregoing, the Court finds that Petitioner has failed to "overcome [the] presumption of honesty and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. Accordingly, Petitioner is not entitled to habeas relief on his eighth claim and it must be denied.

**C. Prosecutorial Misconduct**

In his sixth claim for relief, Petitioner asserts that the prosecution engaged in misconduct by misstating the law regarding the heat of passion defense to the jury in closing arguments. (ECF No. 1 at 18, 155). Respondent argues that Petitioner's prosecutorial misconduct claim is procedurally defaulted. (ECF No. 31 at 28–29). On the merits, Respondent argues that the alleged prosecutorial misconduct was harmless. (ECF No. 31 at 29).

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which found that Petitioner had forfeited the claim. Dalton, 2014 WL 435528, at *3–4. The claim also was raised in the petition for review, which the California Supreme Court summarily denied. (LDs 20, 21). Where "the last reasoned opinion on the claim explicitly imposes a procedural default, [the Court] will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Ylst, 501 U.S. at 803.

1. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman, 501 U.S. at 729–30. This doctrine of procedural

1   default is based on concerns of comity and federalism. Id. at 730–32. However, there are

2   limitations as to when a federal court should invoke procedural default and refuse to review a

3   claim because a petitioner violated a state's procedural rules. Procedural default can only block a

4   claim in federal court if the state court "clearly and expressly states that its judgment rests on a

5   state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).

6          Here, the California Court of Appeal found that Petitioner forfeited his prosecutorial

7   misconduct claim under People v. Morales, 25 Cal. 4th 34, 43–44 (2001), by failing to make a

8   timely objection when the misconduct occurred. Dalton, 2014 WL 435528, at *3. This is known

9   as the contemporaneous objection rule. As the California Court of Appeal clearly and expressly

10  stated that its decision on the prosecutorial misconduct claim rests on a state procedural bar,

11  procedural default is appropriate if the state procedural bar is independent and adequate.

12         To qualify as "independent," a state procedural ground "must not be 'interwoven with the

13  federal law.'" Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v.

14  Long, 463 U.S. 1032, 1040–41 (1983)). "To qualify as an 'adequate' procedural ground, a state

15  rule must be 'firmly established and regularly followed.'" Walker v. Martin, 562 U.S. 307, 316

16  (2011) (quoting Beard v. Kindler, 558 U.S. 53, 60 (2009)). That is, the state procedural bar must

17  be "clear, consistently applied, and well-established at the time of the petitioner's purported

18  default." Lee v. Jacquez, 788 F.3d 1124, 1128 (9th Cir. 2015) (quoting Collier v. Bayer, 408

19  F.3d 1279, 1284 (9th Cir. 2005)). The Ninth Circuit has taken a burden-shifting approach to

20  determining the adequacy of a state procedural ground. See Bennett v. Mueller, 322 F.3d 573,

21  586 (9th Cir. 2003). First, the state must plead an independent and adequate state procedural bar

22  as an affirmative defense. The burden then shifts to the petitioner "to place that defense in issue."

23  Id. The petitioner's burden is "modest," Lee, 788 F.3d at 1128, and can be satisfied by "asserting

24  specific factual allegations that demonstrate the inadequacy of the state procedure, including

25  citation to authority demonstrating inconsistent application of the rule," Bennett, 322 F.3d at

26  586. If the petitioner satisfies his burden, the burden shifts back to the state, which bears "the

27  ultimate burden of proving the adequacy" of the state procedural bar. Id. at 585–86.

28  ///

In the instant case, Respondent asserts that "[f]orfeiture for failure to object is a state procedural bar that is both independent and adequate, and is also consistently applied by California courts." (ECF No. 31 at 29). Petitioner has not raised any challenges to the adequacy of California's contemporaneous objection rule and thus, has failed to place the defense in issue. Accordingly, the Court finds that the California Court of Appeal applied an independent and adequate state procedural rule, and Petitioner has procedurally defaulted this claim. See Howard v. Campbell, 305 F. App'x 442, 444 (9th Cir. 2008) (holding failure to comply with California's independent and adequate contemporaneous objection rule results in a procedural default of a prosecutorial misconduct claim) (citing Rich v. Calderon, 187 F.3d 1064, 1069–70 (9th Cir. 1999)).

A petitioner may obtain federal review of a defaulted claim by demonstrating either "(1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting Coleman, 501 U.S. at 750)). Although attorney error constituting ineffective assistance of counsel provides "cause" to excuse procedural default, Coleman, 501 U.S. at 754, ineffective assistance generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default," Murray v. Carrier, 477 U.S. 478, 489 (1986). Here, Petitioner presented an independent ineffective assistance claim regarding counsel's failure to object to the prosecutor's misstatement, which was denied. As discussed in section IV(E)(2)(h), *infra*, the Fresno County Superior Court's rejection of Petitioner's ineffective assistance claim is not an unreasonable application of clearly established federal law.[8] The Court finds that the alleged ineffectiveness of counsel for not objecting to the misstatement does not constitute cause to excuse the procedural default of the prosecutorial misconduct claim. As Petitioner has failed to establish cause and prejudice for his default, the Court finds that Petitioner is procedurally barred from bringing this

---

[8] The Ninth Circuit has not yet decided whether a state court determination on an ineffective assistance claim alleged as cause to excuse procedural default is subject to AEDPA deference. Jones, 691 F.3d at 1101 n.2. Even if AEDPA deference does not apply, the Court finds that the state court's determination is correct under *de novo* review.

1    claim and it should be dismissed. In any case, Petitioner's claim is without merit.

2        2. <u>Merits</u>

3        In <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986), the Supreme Court held that a

4    prosecutor's improper comments violate the Constitution if they "so infected the trial with

5    unfairness as to make the resulting conviction a denial of due process." <u>Id.</u> at 181 (quoting

6    <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)); <u>Parker v. Matthews</u>, 132 S. Ct. 2148,

7    2153 (2012). As "the appropriate standard of review for such a claim on writ of habeas corpus is

8    'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not

9    enough that the prosecutors' remarks were undesirable or even universally condemned." <u>Darden</u>,

10   477 U.S. at 181 (citations omitted).

11       Petitioner challenges the following statement by the prosecutor during closing argument:

12           So I guess, again, ask yourself: The fact that Dezmon took a swing
             at him, is that sufficient provocation that a reasonable person
13           would be provoked to pulling out a gun and firing at Danetta, and
             then at Dazhane, and then Dezmon? Again, the evidence proves
14           that it was not sufficient provocation.

15   (6 RT 960). In addressing whether counsel rendered ineffective assistance in failing to object to

16   the prosecutor's statement sufficient to provide cause to excuse Petitioner's default, the

17   California Court of Appeal found that the prosecutor's hypothetical question "suggests an

18   incorrect test for determining whether defendant acted in the heat of passion." <u>Dalton</u>, 2014 WL

19   435528, at *3. The Court does not disturb this finding. <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76

20   (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas

21   corpus."). The pertinent question becomes whether the prosecutor's misstatement of law "so

22   infected the trial with unfairness as to make the resulting conviction a denial of due process,"

23   which requires the Court to consider the misstatement in the context of the entire trial. <u>Darden</u>,

24   477 U.S. at 181, 182.

25       The trial lasted several days. The trial court read instructions to the jury before the

26   prosecutor presented his closing argument, which is when he made the misstatement of law.

27   Thereafter, defense counsel made his closing argument, followed by the prosecutor's concluding

28   argument. Before closing arguments, the trial court instructed the jury with CALCRIM No. 200,

which provides in pertinent part: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (1 CT[9] 188). The prosecutor noted at the beginning of his closing argument, before he made the misstatement of law:

> And so if I say something or I have something on the screen that contradicts with what the Judge said, obviously he's the Judge, he makes the call as to what the law is. And so if something contradicts, you need to go with what the—you need to follow the law as the judge read it to you, and as you will have the packet of instructions the Judge will give you at the end of the trial.

(6 RT 921). In response to an objection during defense counsel's closing argument, the trial court instructed the jury that "if [the attorneys] misstate the law . . . You'll have a copy of the instructions, and you'll see what the law is. Again, if there's a conflict between what I say on the law, and what any attorney says, follow my instructions." (6 RT 1022–23). During the defense's closing argument, defense counsel emphasized that the heat of passion instruction "is the most important instruction of them all" and stated:

> Again, ladies and gentlemen, no matter what I say, what the prosecution says, you must decide whether Mr. Dalton was provoked and whether the provocation was sufficient. You must consider whether a person of average disposition would have been provoked and how such a person would react in the same situation, knowing the same facts. That's the key.

(6 RT 1025, 1032).

      In the instant case, the jury was instructed to follow the court's instructions on the law. On multiple occasions the jury was instructed that if there was a conflict between what the attorneys stated and the court's instructions, the jury was required to follow the court's instructions. In comparing the weight and influence of court instructions and arguments of counsel, the Supreme Court has observed:

> [A]rguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding

---

[9] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on October 26, 2015. (ECF No. 33).

statements of the law. Arguments of counsel which misstate the law are subject to objection and to correction by the court. This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court. And the arguments of counsel, like the instructions of the court, must be judged in the context in which they are made.

Boyde v. California, 494 U.S. 370, 384–85 (1990) (citations omitted). A jury is presumed to follow the court's instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). Further, the defense's closing argument occurred after the prosecution's misstatement, and defense counsel took the opportunity to correctly state the law and emphasize that the court's heat of passion instruction is the most important instruction for the jury to consider. In light of this context, the prosecutor's misstatement of law did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181.

**D. Sentencing**

In his seventh claim for relief, Petitioner challenges his sentence. (ECF No. 1 at 20). Petitioner asserts that the trial court was "vindictive, overzealous, and unfair" in sentencing him to consecutive terms with no possibility of probation, citing to Ewing v. California, 538 U.S. 11 (2003) (involving an Eighth Amendment claim). (ECF No. 1 at 258). Respondent argues that the claim is not cognizable on federal habeas review because it challenges the application of state sentencing laws. (ECF No. 34 at 33). Respondent contends that Petitioner has failed to establish that any error of state law or violation of the federal Constitution occurred with respect to his sentence. (Id. at 34).

This claim was raised in all of Petitioner's state habeas petitions. The Fresno County Superior Court found that Petitioner failed to raise a proper claim for habeas corpus relief under In re Dixon, 41 Cal. 2d 756, 759 (1953), and In re Harris, 5 Cal. 4th 813, 829 (1993).[10] (LD 23 at 5–6). The California Court of Appeal, Fifth Appellate District, denied the petition without prejudice because it did "not provide an adequate factual context for the issues petitioner raises,"

---

[10] Under the Dixon rule, a petitioner cannot raise a claim in a post-appeal habeas petition when that claim was not, but could have been, raised on direct appeal. Dixon, 41 Cal. 2d at 759.

1   with citation to <u>Duvall</u>. (LD 27). The California Supreme Court summarily denied the petition.

2   (LD 29). Where "the last reasoned opinion on the claim explicitly imposes a procedural default,

3   [the Court] will presume that a later decision rejecting the claim did not silently disregard that

4   bar and consider the merits." <u>Ylst</u>, 501 U.S. at 803. Procedural default is an affirmative defense

5   that the state must assert; otherwise the defense is waived. <u>Vang</u>, 329 F.3d at 1073. As

6   Respondent has failed to raise procedural default as an affirmative defense to Petitioner's

7   seventh claim for relief, the Court will review the claim *de novo*. See <u>Chaker</u>, 428 F.3d at 1221.

8       With respect to Petitioner's contention that the trial court was "vindictive, overzealous,

9   and unfair" in sentencing him, Petitioner has failed to "overcome [the] presumption of honesty

10  and integrity in those serving as adjudicators." <u>Withrow</u>, 421 U.S. at 47. Petitioner's claim relies

11  on the trial court's judicial rulings with respect to his sentence, and Petitioner does not

12  demonstrate that the trial court's rulings were the product of some extrajudicial source of bias or

13  partiality. See <u>Liteky</u>, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid

14  basis for a bias or partiality motion."); <u>Larson</u>, 515 F.3d at 1067. To the extent that Petitioner

15  challenges the trial court's application of California state law in imposing consecutive terms, that

16  is an issue of state law not cognizable in federal habeas proceedings. See <u>Wilson v. Corcoran</u>,

17  562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a

18  State's criminal judgment susceptible to collateral attack in the federal courts."); <u>Estelle v.</u>

19  <u>McGuire</u>, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to

20  reexamine state-court determinations on state-law questions.").

21      Petitioner also cites to <u>Ewing v. California</u>, which involved an Eighth Amendment

22  challenge to a sentence imposed by the California state court under the state's three strikes law.

23  "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow

24  proportionality principle' that 'applies to noncapital sentences.'" <u>Ewing</u>, 538 U.S. at 20 (quoting

25  <u>Harmelin v. Michigan</u>, 501 U.S. 957, 996–97 (1991) (Kennedy, J., concurring in part and

26  concurring in judgment)). The Eighth Amendment "does not require strict proportionality

27  between crime and sentence but rather forbids only extreme sentences that are grossly

28  disproportionate to the crime." <u>Graham v. Florida</u>, 560 U.S. 48, 60 (2010) (quoting <u>Harmelin</u>,

501 U.S. at 1001 (Kennedy, J., concurring)). The Supreme Court has advised that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." Ewing, 538 U.S. at 22 (quoting Hutto v. Davis, 454 U.S. 370, 374 (1982)).

In addressing an Eighth Amendment claim, the Court first begins with a threshold comparison between "the gravity of the offense and the severity of the sentence." Graham, 560 U.S. at 60. In the "rare case" that the threshold comparison "leads to an inference of gross disproportionality," the Court then engages in a comparative analysis with sentences imposed for other crimes in the same jurisdiction and for the same crime in other jurisdictions. Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring)). Here, Petitioner, a first-time offender, was convicted of one count of second-degree murder and two counts of unpremeditated attempted murder. Multiple special allegations regarding use of a firearm and infliction of great bodily injury were found true. The sentences on the offenses and special allegations were imposed consecutively, and Petitioner was sentenced to an aggregate imprisonment term of eighty-three years to life. In Harmelin, a first-time offender was sentenced under state law to life without the possibility of parole for possessing 672 grams of cocaine, and the Supreme Court upheld the sentence, finding that it did not violate the Eighth Amendment. 501 U.S. 957. As Petitioner received a less severe sentence than the defendant in Harmelin even though his conduct was more serious, the Court finds that Petitioner's sentence is not "grossly disproportionate" to the crime.

Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief on his seventh claim for relief, and it must be denied.

**E. Ineffective Assistance of Counsel**

In the instant petition, Petitioner claims that his trial counsel was ineffective for: (1) failing to prepare a robust defense; (2) failing to deliver three key defense witnesses for examination; (3) failing to challenge the prosecution's assertion that Lee Coleman was not a percipient witness; (4) allowing the trial judge to abuse the judicial process without objection; (5) failing to cross-examine a key prosecution witness effectively; (6) "muzzl[ing]" Petitioner and

1  refusing to answer Petitioner's questions at trial; (7) failing to be prepared for the sentencing

2  hearing; (8) failing to object to prosecutor's misstatement of law in closing argument; and (9)

3  failing to give his full attention to Petitioner's trial. (ECF No. 1 at 6–7, 130–31, 211–12).

4  Further, Petitioner claims that his defense was prejudiced by trial counsel's cumulative errors.

5  (Id. at 6, 131). Respondent argues that Petitioner has failed to show that the California Supreme

6  Court's rejection of the claim triggered an exception to the relitigation bar of 28 U.S.C. §

7  2254(d). (ECF No. 31 at 20).

8       The Court notes that although Petitioner raised ineffective assistance of counsel in all of

9  his state habeas petitions, he raises two additional grounds for the claim in the instant petition.

10  This raises a potential exhaustion bar.[11] However, pursuant to 28 U.S.C. § 2254(b)(2), the Court

11  may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does

12  not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005)

13  (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

14      1.  Legal Standard

15       The clearly established federal law governing ineffective assistance of counsel claims is

16  Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that

17  (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the

18  defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that

19  "counsel's representation fell below an objective standard of reasonableness" and "that counsel

20  made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

21  defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance

22  is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within

23  the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a

---

24  [11] A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair

25  opportunity to consider each claim before presenting it to the federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971). To provide

26  the highest state court the necessary opportunity, the petitioner must "fairly present" the claim with "reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."

27  Duncan, 513 U.S. at 365; Gray v. Netherland, 518 U.S. 152, 162-63 (1996). "Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing

28  upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (citation omitted).

1    petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional

2    errors, the result of the proceeding would have been different. A reasonable probability is a

3    probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether

4    it is 'reasonable likely' the result would have been different. . . . The likelihood of a different

5    result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland,

6    466 U.S. at 696, 693).

7        When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of

8    the Strickland standard was unreasonable. This is different from asking whether defense

9    counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover,

10   because Strickland articulates "a general standard, a state court has even more latitude to

11   reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance,

12   556 U.S. 111, 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards

13   created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in

14   tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of

15   ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to

16   afford 'both the state court and the defense attorney the benefit of the doubt." Woods v. Donald,

17   135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this

18   "doubly deferential" review applies, the appropriate inquiry is "whether there is any reasonable

19   argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

20       2.   Exhausted Grounds

21       Petitioner raised ineffective assistance of counsel in his state habeas petitions. The Fresno

22   County Superior Court denied the claim in a reasoned decision. (LD 23 at 2–3). The California

23   Court of Appeal, Fifth Appellate District, denied the petition without prejudice because it did

24   "not provide an adequate factual context for the issues petitioner raises," with citation to Duvall.

25   (LD 27). The California Supreme Court summarily denied the petition. (LD 29). The Court

26   presumes that the California Supreme Court adjudicated the claim on the merits. See Richter,

27   562 U.S. at 99. As federal courts review the last reasoned state court opinion, the Court will

28   "look through" the California Supreme Court's summary denial and examine the reasoned

1   decision of the Fresno County Superior Court. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S.

2   at 806.

3        In rejecting the ineffective assistance of counsel claim, the Fresno County Superior Court

4   stated:

> First, Petitioner contends that he received ineffective assistance of counsel at trial. Specifically, Petitioner argues that his trial attorney provided ineffective assistance when he failed to: (1) produce Rose Robinson, Lee Coleman, and Angeline White as witnesses for the defense, (2) object when the prosecution incorrectly explained the law regarding the concept of "heat of passion" to the jury, [3] answer Petitioner's questions at trial, [4] introduce Petitioner's prescriptions for high blood pressure and diabetes, his lack of a prior criminal record, a loose leaf binder, and Danetta Henry's criminal record as evidence at trial, [5] effectively cross-examine Dezmon Hamilton, [6] object to either the trial court's imposition of consecutive sentences or the trial court's "overbearing" demeanor at trial, and [7] challenge the prosecution's assertion that Lee Coleman was not a "percipient witness." In addition, Petitioner maintains that his attorney also provided ineffective assistance of counsel when he mispronounced the names of Danetta Henry and Dazhane Henry during trial and when he informed Petitioner that he would be handcuffed if he spoke out of turn.
>
> Initially, the Court notes that Petitioner has failed to attach a proof of service of his petition on the District Attorney of Kern County, where he is currently confined. Consequently, Petitioner has failed to attach a proper proof of service of his petition for writ of habeas corpus. (Pen. Code, § 1475.)
>
> Nevertheless, even had Petitioner attached a proper proof of service, the Court finds that Petitioner has failed to present a viable claim for habeas corpus relief.
>
> In order to demonstrate ineffective assistance of counsel, Petitioner must allege facts showing that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that his defense suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690–92.) The Court finds that Petitioner has failed to prove that his trial counsel provided ineffective assistance of counsel because Petitioner has not established that there is a reasonable probability that the result of his criminal proceeding would have been more favorable had his attorney taken the above actions. (*In re Cox* (2003) 30 Cal.4th 974, 1019–20 [stating that court may dispose of ineffective assistance of counsel claim if petitioner has not demonstrated sufficient prejudice without deciding if counsel's performance was deficient].)
> As Petitioner has not demonstrated that his defense suffered prejudice as a result of his counsel's alleged deficient performance, the Court finds that Petitioner has failed to present a viable claim for habeas corpus relief with respect to the claims supporting his

1            first contention.

2 (LD 23 at 1–3).

3        If a petitioner's claim has been adjudicated on the merits in state court, the AEDPA's

4 deferential standards apply; otherwise, the claim is reviewed *de novo*. Cone, 556 U.S. at 472.

5 "Under AEDPA, an adjudication on the merits is 'a decision finally resolving the parties' claims

6 . . . that is based on the substance of the claim advanced, rather than on a procedural, or other,

7 ground.'" Amado v. Gonzalez, 758 F.3d 1119, 1130 (9th Cir. 2014) (quoting Lambert v.

8 Blodgett, 393 F.3d 943, 969 (9th Cir. 2004)). In determining whether the state court's

9 adjudication was on the merits or procedural, the Court considers the reasons, if any, set forth in

10 the state court decision. Amado, 758 F.3d at 1131 (citing James v. Ryan, 733 F.3d 911, 916 (9th

11 Cir. 2013)). AEDPA deference also applies to alternative holdings on the merits. Calbourne v.

12 Ryan, 745 F.3d 362, 383 (9th Cir. 2014), overruled on other grounds by McKinney v. Ryan, 813

13 F.3d 798 (9th Cir. 2015) (en banc).

14        In this case, the Fresno County Superior Court found that Petitioner had failed to attach a

15 proper proof of service of his state habeas petition. However, the court went on to hold that "[a]s

16 Petitioner has not demonstrated that his defense suffered prejudice as a result of his counsel's

17 alleged deficient performance, the Court finds that Petitioner has failed to present a viable claim

18 for habeas corpus relief with respect to the claims supporting his first contention." (LD 23 at 3).

19 Given that the Fresno County Superior Court proceeded to address the merits of the claim and

20 because its conclusion that Petitioner failed to present a viable claim was based on Petitioner's

21 failure to satisfy Strickland's prejudice prong, the Court finds that AEDPA deference applies to

22 the state court's decision on the ineffective assistance of counsel claim.

23                  **a.  Failure to Prepare Robust Defense**

24        Petitioner asserts that trial counsel was ineffective for failing to prepare a robust defense

25 in that he did not investigate and pursue mitigating evidence in police reports and did not

26 introduce as evidence the victim's criminal record and police contacts, which was contained in a

27 loose-leaf binder on the defense table at trial. (ECF No. 1 at 144, 146, 215–17). Petitioner also

28 asserts that trial counsel was ineffective for failing to introduce at trial Petitioner's prescriptions

for high blood pressure and diabetes medication. (Id. at 144, 217–18).

At a pretrial *in limine* hearing, defense counsel informed the trial court that there were over 124 police contacts between Petitioner's residence and the parties and that although Petitioner was not personally present at all of these, he was present at a majority of them. (1 RT 30). Regarding whether evidence of theses prior incidents could be introduced, the trial court declared:

> Then the Court's ruling, I will allow the introduction of evidence of prior incidents of—I guess it's threats or violence, coming from any of the three victims.
>
> . . .
>
> [W]ith the testimony being—and it goes to his state of relevance—to his state of mind, and what he knew about these folks when the altercation occurred, because he had personal knowledge, either having witnessed these events, or these events happened at his apartment while he wasn't there, but they happened to a person with whom he lived, and those events were related to him; as long as that foundation is laid, that it was—he was told about it, or he witnessed it, then I see no reason to exclude that. But again, the foundation must first be laid before introduction of the conduct or statements attributed to the victims.

(1 RT 34–35). Based on the trial court's *in limine* ruling, defense counsel could only introduce Danetta's prior police contacts that Petitioner had personally witnessed or that Petitioner had been informed of. Petitioner does not allege that he personally witnessed or had been informed of all of Danetta's prior police contacts or that he knew of Danetta's criminal history. Therefore, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's alleged failure to investigate and pursue evidence in the police reports and counsel's failure to introduce all of Danetta's prior police contacts did not prejudice the defense.

Petitioner also claims that counsel "refused to acquiesce" to Petitioner's request to introduce evidence of his prescriptions for high blood pressure and diabetes medication. (ECF No. 1 at 144). Petitioner argues that his health "was a contributive factor that built up stress, fear, and dread over the past 14 months of harassments and provocation perpetrated by Danetta." (Id.). Petitioner fails to establish how "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had introduced evidence of his prescriptions for medication. Strickland, 466 U.S. at 694. Thus, it was not unreasonable for the Fresno County

Superior Court to conclude that counsel's failure to introduce evidence of Petitioner's prescriptions did not prejudice the defense.

The Court finds that the Fresno County Superior Court's decision is not contrary to, or an unreasonable application of, clearly established federal law, nor is it based on an unreasonable determination of fact. Its ruling that Petitioner did not demonstrate prejudice as a result of counsel's failure to introduce as evidence Danetta's criminal record and police contacts and Petitioner's prescriptions for high blood pressure and diabetes medication is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### b.  Failure to Produce Key Defense Witnesses to Testify at Trial

Petitioner asserts that trial counsel was ineffective for failing to produce Rose Robinson, Lee Coleman, and Angeline White as witnesses for the defense at trial. (ECF No. 1 at 209–11). Petitioner claims that Rose Robinson ("Robinson") could have provided mitigating and exculpatory testimony. (ECF No. 1 at 106). According to a police report, on January 24, 2011, Robinson witnessed two altercations between Danetta and Lora. (ECF No. 1 at 344–45). Although Petitioner did not witness how either of those altercations started, Petitioner intervened to break them up. (Id. at 346). Robinson did not witness the March 2, 2011 incident that gave rise to Petitioner's convictions. Although Robinson could testify to the January 24, 2011 incidents to demonstrate the antagonistic relationship between the victim and Lora, the trial testimony thoroughly established the nature of the relationship. As Robinson's purported testimony would be cumulative, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's failure to call Robinson as a witness did not prejudice the defense. See Wong v. Belmontes, 558 U.S. 15, 22–23 (2009); Gulbrandson v. Ryan, 738 F.3d 976, 990 (9th Cir. 2013).

Petitioner claims that Lee Coleman ("Coleman") was a witness favorable to the defense who made statements to the police directly related to Petitioner's case. (ECF No. 1 at 107, 210–11). Coleman stated that he knew Danetta and her son and that Danetta was always fighting with Lora. (Id. at 272). The night before the March 2, 2011 incident, Coleman observed Danetta

1    throwing some unknown type of liquid from a large pan on a neighboring apartment's front door

2    just minutes after the police had left. On March 2, 2011, Coleman was playing video games in

3    his living room when he heard six or seven gunshots. When Coleman looked out of his bedroom

4    window, from which he has a clear view of the courtyard, he saw Danetta on the ground and

5    Dezmon pinning a man against an apartment door, trying to take a gun away the man. Coleman

6    heard someone yell out, "You shot everyone." (Id. at 272–73). Dazhane, Lora, and Petitioner all

7    testified regarding the victim pouring "sludge material" on Petitioner's door the night before the

8    shooting. Petitioner and multiple percipient witnesses testified about the shooting. Given that

9    Coleman did not personally observe the shooting and that his purported testimony would be

10   cumulative, it was not unreasonable for the Fresno County Superior Court to conclude that

11   counsel's failure to call Coleman as a witness did not prejudice the defense. See Wong, 558 U.S.

12   at 22–23; Gulbrandson, 738 F.3d at 990.

13          With respect to Angeline White, Petitioner fails to allege what testimony she would give

14   such that "there is a reasonable probability that . . . the result of the proceeding would have been

15   different." Strickland, 466 U.S. at 694. Thus, it was not unreasonable for the Fresno County

16   Superior Court to conclude that counsel's failure to call Angeline White as a witness did not

17   prejudice the defense.

18          The Court finds that the Fresno County Superior Court's decision is not contrary to, or an

19   unreasonable application of, clearly established federal law, nor is it based on an unreasonable

20   determination of fact. Its ruling that Petitioner did not demonstrate prejudice as a result of

21   counsel's failure to call Rose Robinson, Lee Coleman, and Angeline White as witnesses is not

22   "so lacking in justification that there was an error well understood and comprehended in existing

23   law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly,

24   Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

25          **c.  Failure to Challenge Assertion that Lee Coleman Was Not Percipient**
             **Witness**
26

27          Petitioner asserts that trial counsel was ineffective for failing to challenge the

28   prosecution's claim that Lee Coleman was not a percipient witness. (ECF No. 1 at 147). The

1   prosecution made this claim when the court was ruling on which prior convictions of potential

2   witnesses would be admissible for impeachment. (1 RT 133–35). Based on the prosecution's

3   representation that Coleman was not a percipient witness, and given that Coleman had not

4   testified at the first trial and seemed unlikely to testify at the second trial, the trial court reserved

5   its ruling on Coleman. (1 RT 137, 139). Coleman did not testify at Petitioner's second trial. As

6   discussed above, Coleman did not witness the shootings, but did witness the aftermath when

7   Dezmon attempted to take the gun away from Petitioner.

8        Petitioner fails to demonstrate how "there is a reasonable probability that . . . the result of

9   the proceeding would have been different" if counsel had challenged the prosecution's

10  representation that Coleman was not a percipient witness. Strickland, 466 U.S. at 694. Thus, it

11  was not unreasonable for the Fresno County Superior Court to conclude that counsel's failure to

12  do so did not prejudice the defense. The state court's decision is not "so lacking in justification

13  that there was an error well understood and comprehended in existing law beyond any possibility

14  for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to

15  habeas relief for ineffective assistance of counsel on this ground.

16              **d.  Failure to Object to Trial Court's Alleged Abuse of Judicial Process**

17       Petitioner asserts that trial counsel was ineffective for failing to object when the trial

18  judge engaged in misconduct during Dazhane's cross-examination. (ECF No. 1 at 145). As

19  discussed in section IV(B)(1), *supra*, Petitioner failed to establish that that the trial court made

20  the alleged prejudicial and biased remark or completely halted the cross-examination of Dazhane

21  before defense counsel was finished. Thus, it was not unreasonable for the Fresno County

22  Superior Court to conclude that counsel's alleged failure to object to the trial court's alleged

23  misconduct during Dazhane's cross-examination did not prejudice the defense. The state court's

24  decision is not "so lacking in justification that there was an error well understood and

25  comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562

26  U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of

27  counsel on this ground.

28  ///

### e.   Failure to Effectively Cross-Examine Dezmon

Petitioner asserts that trial counsel was ineffective because he failed to preserve Petitioner's credibility by not effectively cross-examining Dezmon. (ECF No. 1 at 219–20). Specifically, Petitioner argues that when counsel questioned Dezmon, counsel should have established, consistent with Petitioner's testimony later in the trial, that Petitioner never met, saw, or made eye contact with Dezmon before March 2, 2011. (ECF No. 1 at 220). On direct examination, Dezmon testified as follows:

> [PROSECUTOR] Q. [D]o you know how long Mr. Dalton lived in Apartment 14 next to you?
>
> [DEZMON H.] A. Uhm—he was there before we lived there, so I don't know how long. Just as long as we've been living there.
>
> Q. Okay. And did you ever have any conversations with him? Did you ever talk to him?
>
> A. No.
>
> Q. Did you ever see him in the complex?
>
> A. Yes.
>
> Q. How often would you see Mr. Dalton in the complex?
>
> A. Pretty often.
>
> Q. Did you ever see him as he was coming and going out of his apartment?
>
> A. Yes.
>
> Q. Did you ever see him as you were coming and going out of your apartment?
>
> A. No.
>
> Q. Did you ever make any small talk with Mr. Dalton, like, "Hey, how it's going" or "Bye"?
>
> A. No.

(1 RT 91–92). On cross-examination, defense counsel confirmed that Dezmon had never spoken with Petitioner before the date of the victim's death. (2 RT 174).

Dezmon's testimony is not incompatible with Petitioner's testimony. It is possible that while Dezmon saw Petitioner coming and going from Petitioner's apartment, Petitioner never

met or saw Dezmon. Petitioner fails to establish how "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had clearly established that Petitioner never met, saw, or made eye contact with Dezmon before March 2, 2011. Strickland, 466 U.S. at 694. Therefore, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's failure to do so did not prejudice the defense. The state court's decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### f.   "Muzzling" Petitioner and Failure to Answer Petitioner's Questions During Trial

Petitioner asserts that trial counsel was ineffective because counsel "muzzled" Petitioner by telling him that if Petitioner ever spoke out of turn, the bailiff would handcuff Petitioner. (ECF No. 1 at 7). Petitioner also asserts that trial counsel was ineffective for failing to answer Petitioner's questions during the trial, especially regarding the numerous side bars, and for threatening to walk out if Petitioner did not stop asking questions. (ECF No. 1 at 143, 7). Petitioner states that counsel's failure to answer his questions left Petitioner "in the dark about the scope and direction of his trial." (Id. at 144). Petitioner fails to demonstrate how "there is a reasonable probability that . . . the result of the proceeding would have been different" if counsel had not "muzzled" Petitioner or if counsel had answered Petitioner's questions during trial. Strickland, 466 U.S. at 694. Thus, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's admonition for Petitioner not to speak out of turn and counsel's failure to answer Petitioner's questions during trial did not prejudice the defense. The state court's decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

///

### g.  Failure to Be Prepared for Sentencing

Petitioner asserts that trial counsel was ineffective for failing to be prepared for the sentencing hearing in that counsel did not raise certain mitigating circumstances and did not object to the imposition of consecutive sentences. (ECF No. 1 at 147, 221–22). Petitioner contends that counsel should have presented the following evidence at sentencing: that Petitioner had no prior convictions, that he was threatened the night before his arrest and provoked over short and long periods of time, and his medical history. (ECF No. 1 at 222). Petitioner's lack of criminal history and his medical history were included in the report of the probation officer presented to the trial court before sentencing. (1 CT 272, 276). At sentencing, the trial court indicated that it had received the probation report. (6 RT 1089). Additionally, Petitioner's daughter and sister spoke at the sentencing hearing in support of Petitioner, emphasizing Petitioner's good character, lack of criminal history, and the threats and malicious behavior of Danetta. (6 RT 1097–1104). Before imposing sentence, the trial court stated:

> And Mr. Dalton is an enigma. Prior to the events on March 2nd, 2011, at about ten before noon, he was a—yeah, a college graduate, gainfully employed at the same location for over—let's see—17 years. And as some of the letters point out—brother, uncle, father—but prior—the prior two years or so to March 2nd, 2011, this feud penetrated his life, and now he is going to be defined by the actions that he took in those brief moments of March 2nd, 2011, at about 11:49 a.m. There were many other options to take on that morning. But as I said—as I will say, I sat through the entire trial, heard the evidence, heard the testimony of Mr. Dalton himself, understood the layout of the complex and the numerous shots that were fired, and I'll never understand that decision. But nonetheless, I have to impose judgment here, Mr. Dalton.

(6 RT 1107–08). These statements demonstrate that the trial court was aware of Petitioner's lack of criminal history, the extent of the antagonistic relationship between Danetta and Petitioner, and the events that occurred the night before the shooting. Thus, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's failure to specifically argue these mitigating circumstances himself during the sentencing hearing did not prejudice the defense.

Petitioner also contends that "trial counsel's failure to object to, or even discuss, the trial judge handing down consecutive sentences with no chance of probation . . . was prejudicial."

1   (ECF No. 1 at 221). Pursuant to California Penal Code section 12022.53(g), Petitioner was not

2   eligible for probation, and the trial court acknowledged that it had no discretion to consider

3   probation. (6 RT 1107). With respect to the second-degree murder conviction (count 1),

4   California Penal Code section 190(a) mandates an imprisonment term of fifteen years to life.

5   California Penal Code section 12022.53(d) mandates a consecutive term of twenty-five years to

6   life when a defendant personally and intentionally discharges a firearm and proximately causes

7   great bodily injury or death to any person other than an accomplice. The trial court

8   acknowledged that it had no discretion regarding the sentence for count 1. (6 RT 1091). Contrary

9   to Petitioner's contention, counsel informed the trial court that it had some discretion with

10  respect to the length of the sentences for counts 2 and 3 and whether they would run consecutive

11  or concurrent. (6 RT 1092–93). The trial court found that aggravating factors outweighed those

12  in mitigation and ordered the imprisonment terms for counts 2 and 3 to run consecutively. (6 RT

13  1109). Based on the foregoing, it was not unreasonable for the Fresno County Superior Court to

14  conclude that counsel's alleged failure to object to the trial court's imposition of consecutive

15  sentences with no consideration of probation did not prejudice the defense.

16         The Court finds that the Fresno County Superior Court's decision was not contrary to, or

17  an unreasonable application of, clearly established federal law, nor was it based on an

18  unreasonable determination of fact. Its ruling that Petitioner did not demonstrate prejudice as a

19  result of counsel's alleged deficient performance at the sentencing hearing is not "so lacking in

20  justification that there was an error well understood and comprehended in existing law beyond

21  any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is

22  not entitled to habeas relief for ineffective assistance of counsel on this ground.

### h.   Failure to Object When Prosecutor Misstated Law on Heat of Passion

24         Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's

25  misstatement of law regarding the heat of passion defense during closing argument. (ECF No. 1

26  at 130, 211–12). As discussed in section IV(C)(2), *supra*, the prosecutor's misstatement did not

27  "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."

28  Darden, 477 U.S. at 181. The jury was instructed on multiple occasions that if there was a

conflict between what the attorneys stated and the court's instructions, the jury was required to follow the court's instructions. Additionally, at the beginning of his closing argument, the prosecutor cautioned the jurors, "And so if I say something . . . that contradicts . . . you need to follow the law as the judge read it to you . . ." (6 RT 921). Moreover, the defense's closing argument occurred after the prosecution's misstatement, and defense counsel took the opportunity to correctly state the law and emphasize that the court's heat of passion instruction is the most important instruction for the jury to consider. Thus, it was not unreasonable for the Fresno County Superior Court to conclude that counsel's failure to object to the prosecutor's misstatement of law regarding heat of passion did not prejudice the defense. See Cunningham v. Wong, 704 F.3d 1143, 1159 (9th Cir. 2013) (holding, on habeas review, that counsel's failure to object to improper comment in closing argument did not prejudice petitioner where trial judge explained to the jury that closing arguments are not evidence). The state court's decision is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

3.   Unexhausted Grounds

In his state habeas petition in the California Supreme Court, Petitioner did not raise that trial counsel was ineffective for failing to give his full attention to Petitioner's trial. Further, Petitioner did not argue that he was prejudiced by trial counsel's cumulative errors. Pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett, 406 F.3d at 624.

**a.   Failure to Give Full Attention to Petitioner's Trial**

Petitioner asserts that trial counsel was ineffective for failing to give his full attention to Petitioner's trial. (ECF No. 1 at 7). Petitioner alleges that while counsel was in court representing Petitioner, counsel simultaneously listened on his cell phone to a proceeding in another courtroom. (Id.). Petitioner fails to submit any additional facts regarding at what point in the proceeding this conduct occurred, how long counsel was listening on his cell phone to the other

1   proceeding, or how specifically counsel's conduct affected defense of Petitioner's case.

2   Petitioner fails to demonstrate how "there is a reasonable probability that . . . the result of the

3   proceeding would have been different" if counsel had not listened to another proceeding while

4   simultaneously representing Petitioner in court. Strickland, 466 U.S. at 694. See United States v.

5   Petersen, 777 F.2d 482, 484 (9th Cir. 1985) (holding defendants failed to show prejudice when

6   attorney had not been sleeping or dozing during a substantial portion of the trial, and may not

7   have been sleeping at all). The Court finds that Petitioner has not satisfied the prejudice prong of

8   Strickland.[12] As it is "perfectly clear" that Petitioner does not raise a colorable ineffective

9   assistance claim with respect to counsel's alleged failure to give his full attention to Petitioner's

10  case, the Court may deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

11              **b.  Cumulative Errors**

12          Petitioner asserts that his defense was prejudiced by counsel's "cumulative

13  ineffectiveness." (ECF No. 1 at 131). The Ninth Circuit "ha[s] previously recognized that

14  'prejudice may result from the cumulative impact of [counsel's] multiple deficiencies.'" Woods

15  v. Sinclair, 764 F.3d 1109, 1139 (9th Cir. 2014) (quoting Cooper v. Fitzharris, 586 F.2d 1325,

16  1333 (9th Cir. 1978)). As discussed above, Petitioner has not demonstrated prejudice as to the

17  individual grounds of ineffective assistance. "[T]he nature of the claims does not support a

18  conclusion of cumulative prejudice," and counsel's performance "did not render [Petitioner's]

19  trial fundamentally unfair." Davis v. Woodford, 384 F.3d 628, 654 (9th Cir. 2004). Thus,

20  Petitioner is not entitled to relief on his claim of cumulative deficiency. See Woods, 764 F.3d at

21  1139. As it is "perfectly clear" that Petitioner does not raise a colorable ineffective assistance

22  claim with respect to counsel's alleged cumulative deficiencies, the Court may deny the claim on

23  the merits pursuant to 28 U.S.C. § 2254(b)(2).

24  ///

25  ///

26

27  [12] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

28  followed." Strickland, 466 U.S. at 697.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that:

1. Petitioner's second and sixth claims for relief in the petition for writ of habeas corpus be DISMISSED; and

2. The petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **May 5, 2016**                          /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE